UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
DIVISION

TORREY CRAFT #824631,

        Petitioner,             Case No. 2:19-cv-102

v.                                       Maarten Vermaat
                                       U.S. Magistrate Judge

CATHERINE S. BAUMAN,

        Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner Torrey Craft under 28 U.S.C. § 2254. Craft is incarcerated with the Michigan Department of Corrections (MDOC) at the Newberry Correctional Facility (KCF) in Newberry, Luce County, Michigan. Following a jury trial in the Wayne County Third Circuit Court, Craft was convicted of possession of a firearm during the commission of a felony, carrying a weapon with unlawful intent, and two counts of assault with intent to do great bodily harm. (ECF No. 8-13, PageID.852–53.) The court sentenced Craft to respective prison terms of two years, one to five years, and 54 months to ten years. (ECF No. 8-14, PageID.873–74.)

On May 10, 2019, Craft filed his habeas corpus petition. (ECF No. 1.) Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner signed his application on May 10, 2019. (ECF No. 1, PageID.30.) The petition was received by the Court on May 24, 2019. For purposes

of this opinion, the Court has given Craft the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

The petition raises two grounds for relief, as follows:

I. The State Court acted contrary to Supreme Court precedent and denied Craft due process of law when it arbitrarily refused to grant a full "*Wade*" hearing despite the unnecessarily suggestive circumstances surrounding Craft's pretrial lineup.

II. The State Court of Appeals acted contrary to Supreme Court precedent and denied Craft due process of law when it denied reversal based on the trial court's error in reinstructing the jury part way through its deliberation.

(ECF No. 1, PageID.5,9.) Respondent filed an answer to the petition (ECF No.7) stating that the grounds should be denied because Craft has not demonstrated that the court's determinations were objectively unreasonable and because the claims are meritless. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), this Court finds that Craft has not shown that either court acted unreasonably, or contrary to clearly established federal law. Accordingly, the petition will be denied.

## Discussion

**I. Factual allegations**

The Michigan Court of Appeals made the following factual findings during its review of the trial court records:

2

The events leading to defendant's convictions had as their origin a dispute between him and his girlfriend in the summer of 2016. During trial, Kevin Hollis testified that he witnessed the dispute and tried to intervene on the girlfriend's behalf. Defendant became angry at Hollis and expressed a desire to fight with him, but no fight ensued.

Instead, the next day, Hollis was playing catch outside with Calvin Arnold, Jr., and Arnold's stepsons, seven-year-old Amir and nine-year-old Antonio, while Bianca Primm, the boys' mother, watched. Hollis heard someone call his nickname (Bam) and say, "You still wanna[ ] fight?" and "You still talkin' that scrap shit?" Hollis testified that he recognized defendant and noticed that another man was with defendant, though he could not identify him because his face was covered. Hollis saw defendant produce a rifle and shoot one round toward him. Instead of hitting Hollis, the bullet struck Amir. Defendant and the other man then ran to a waiting vehicle—a "gold, or beige," or "silver" Trailblazer, according to Hollis—and drove away. Amir was taken to the hospital and underwent several surgeries, eventually recovering from his injuries.

Hollis, who had known defendant for more than three years, gave defendant's name to the police and later identified him from a photograph. Police officers went to defendant's last-known address and observed defendant parking a silver Trailblazer. The officers attempted to stop defendant, but he fled in the vehicle and escaped by ditching the vehicle and continuing his flight on foot. Shortly thereafter, officers caught up with defendant and took him into custody.

While in custody, and within two days of the shooting, defendant participated in a live, six-man lineup. Defendant was assigned legal counsel for purposes of the lineup, and his counsel did not object to any portion of the lineup. After viewing the assembled men, both Arnold and Primm identified defendant as the assailant. Defendant was charged with three counts of assault with intent to commit murder, MCL 750.83; one count of carrying a dangerous weapon with unlawful intent (carrying with intent), MCL 750.226; and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.

Defendant's trial counsel moved to suppress the lineup identification. Defense counsel argued that, notwithstanding the lack of objection by the lineup counsel, the lineup was impermissibly suggestive because: (1) defendant was shorter and smaller than the other men; (2) he had a lighter complexion than the others; and (3) he was one of only two men who wore an orange jumpsuit. Defense counsel requested an expanded evidentiary hearing to present testimony from his lineup counsel, Arnold, Primm, and four detectives. This type of hearing is commonly referred to as a Wade hearing, referencing the federal

>Supreme Court's decision in *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).
>
>The trial court held an evidentiary hearing but limited the scope to testimony from the lineup counsel. After hearing the testimony, reviewing a photograph of the lineup, and considering argument from counsel, the trial court held that defendant had not overcome the presumption that the lineup was valid. Referring to the lineup photograph, the trial court noted "that [there] wasn't anything that was significantly off" and that, while there were some physical differences among the lineup participants, "[t]here are height differences that are allowed, and clothing." The trial court concluded, "I cannot find, as a matter of law, that there was anything impermissibly suggestive as to give rise to a substantial likelihood of misidentification."
>
>The trial proceeded before a jury. During trial, Arnold, Primm, and Hollis testified that defendant was the person who shot Amir. Although Arnold testified that he had seen defendant's name on television following the lineup, both Arnold and Primm testified that their identification of defendant was based on their memory of his face at the time of the shooting, rather than any other outside influence. Arnold was asked whether defendant's attire during the lineup factored into his identification, and Arnold denied that it had.
>
>At the close of proofs, the trial court prepared to instruct the jury. Both the prosecutor and defense counsel approved the proposed instructions, although no one appears to have noticed that there were no instructions for the two firearm-related counts—carrying with intent and felony-firearm. Shortly after the jury began deliberating, it asked the trial court in writing: "There are 5 counts only 3 are in the back of the binder. We thought the last two were dropped. Are we voting on all 5? The verdict form has 5." Recognizing its error, the trial court asked counsel to research whether it could provide instructions to the jury on the omitted counts or, instead, it had to dismiss those counts. After hearing argument, the trial court determined that it could provide the omitted instructions, and the trial court proceeded to reinstruct the jury, this time on all five counts. The jury eventually returned a verdict of guilty on two counts of assault with intent to do great bodily harm less than murder, MCL 750.84 (a lesser-included offense to assault with intent to commit murder), as well as on the two firearm-related counts.

*People v. Craft*, 927 N.W.2d 708, 710–12 (Mich. Ct. App. 2018).

The Michigan Court of Appeals affirmed Craft's conviction after determining that the trial court did not abuse its discretion by declining an expanded evidentiary

4

hearing or providing supplemental jury instructions. *Id.* at 714–17. Craft filed an application for leave to appeal to the Michigan Supreme Court on October 2, 2018. (ECF No. 8-16, PageID.974–1018). On February 14, 2019, the Michigan Supreme Court denied Craft's application. *People v. Craft*, 972 N.W.2d 708 (Mich. 2019). As discussed above, Craft timely filed this petition for writ of habeas corpus on May 10, 2019.

II. **AEDPA standard**

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more

6

leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*,

7

*Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III. Denial of *Wade* Hearing

According to Craft, he was subject to a pretrial lineup in which he was (1) noticeably smaller than the other participants, (2) lighter in complexion than the other participants, and (3) one of only two participants wearing an MDOC jumpsuit. (ECF No. 1, PageID.20.) He says that these physical differences, in combination with the witnesses' "exposure to extraneous out-of-court suggestive circumstances" rendered the identifying witnesses biased against him.[1] (*Id.*) But the trial court did not conduct an evidentiary hearing in which it considered all of these circumstances together. (*Id.*) Instead, it conducted a hearing in which it considered only a photograph of the lineup, and testimony from the counsel who represented Craft at the lineup. (*Id.*) Craft contends that, per the Supreme Court's decision in *United States v. Wade*, 388 U.S. 218 (1967), by limiting the hearing to these sources and

---

[1] Craft concedes that some of the alleged suggestive circumstances were beyond the control of the police, but nevertheless argues that the trial court was required to consider them. (ECF No. 1, PageID.20.)

8

failing to consider the witnesses' "susceptibility to influence," the trial court violated his due process rights. (ECF No. 1, PageID.20–23.)

In general, the Constitution "protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit." *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012). However, the Supreme Court has clearly established that pretrial identification obtained through unnecessarily suggestive circumstances arranged by the police *may* be "so extremely unfair that its admission violates fundamental conceptions of justice" contrary to the Due Process Clause. *Id.* (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). Courts make this determination in a two-step inquiry. *Id.* at 239 (citing *Neil v. Biggers*, 409 U.S. 188, 201 (1972)); *see also Manson v. Brathwaite*, 432 U.S. 98, 107 (1977). The first step requires the court to determine whether the police manufactured an unnecessarily suggestive identification procedure. *Perry*, 565 U.S. at 229 (citing *Dowling*, 493 U.S. at 352). The second step requires the court to determine whether the totality of the circumstances surrounding the procedure created a "substantial likelihood of misidentification." *Id.* If, at the first step, the court determines that the police did not manufacture an unnecessarily suggestive procedure, it need not proceed to the second step. *Id.* at 245 ("[T]he fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to

9

screen such evidence for reliability before allowing the jury to assess its creditworthiness.").

But the issue in *United States v. Wade* was not with suggestive circumstances surrounding the lineup—it was with the absence of counsel at the lineup where the defendant had already been indicted. 388 U.S. at 236–38. There, the Court had to determine whether the post-indictment lineup constituted a critical stage of the proceedings, such that the absence of counsel violated the defendant's Sixth Amendment rights. *Id.* at 223–25. The Court noted that an unrepresented defendant's inability to "reconstruct any unfairness that occurred at the lineup," would undermine his ability to attack the reliability of both pretrial and courtroom identification on cross-examination, and ultimately determined that the pretrial lineup was a critical stage of the proceedings. *Id.* at 232–34. Because pretrial identification at a lineup is "most often used . . . to crystalize the witnesses' identification of the defendant for future reference," the Court went forward to consider whether courtroom identification made by witnesses who participated in the unconstitutional lineup had to be suppressed. *Id.* at 240–41.

In the end, the Court rejected a per se exclusionary rule barring the admission of such identification and opted for an independent-basis test. *Id.* at 240. Accordingly, the Court instructed the trial court to conduct a hearing in which it considered, among other factors:

> [1] the prior opportunity to observe the alleged criminal act, [2] the existence of any discrepancy between any pre-lineup description and the defendant's actual description, [3] any identification prior to lineup of another person, [4] the identification by picture of the defendant prior

10

to the lineup, [5] failure to identify the defendant on a prior occasion, and [6] the lapse of time between the alleged act and the lineup identification.

*Id.* at 241. If the hearing established that the identification testimony was based on observations outside of and distinct from the unconstitutional pretrial lineup, the courtroom identification was admissible. *Id.* at 240–41.

In contrast to the defendant in *Wade*, Craft was represented during his lineup. (ECF No. 8-7, PageID.288.) Moreover, the counsel who represented Craft testified as to the circumstances of the lineup in the trial court's hearing on Craft's motion to suppress identification. (ECF No. 8-7, PageID.288–97.) Therefore, under federal law, the trial court was tasked not with determining whether the in-court identification was independently reliable pursuant to *Wade*, but rather with employing the two-step inquiry laid out in *Biggers* and its progeny. After considering the testimony of the counsel who represented Craft in the lineup, the court determined that Craft had not been subject to unnecessarily suggestive circumstances manufactured by the police that gave rise to a substantial likelihood of misidentification. (*Id.* at 315–17.)

The Michigan Court of Appeals rejected Craft's argument that the court was further obligated to inquire into the reliability of the lineup identifications:

> First, we conclude that defendant has not met his burden to show an entitlement to an expanded evidentiary hearing under Wade. The trial court did conduct an evidentiary hearing regarding the lineup, during which a photograph of the lineup was admitted as evidence and defendant's lineup counsel testified to her impression of the procedure. On appeal, defendant does not identify any other evidence that was necessary to a determination of the lineup's suggestibility. While defendant's motion before the trial court indicated that he wished to present testimony from Arnold and Primm, as well as four police detectives, both Arnold and Primm testified at trial, and, on appeal,

11

defendant has not explained what testimony he wished to elicit from the detectives. Defendant does not explain why the photograph and his lineup counsel's testimony were insufficient for the trial court to decide the issue, nor does defendant explain why the trial testimony of Arnold and Primm is insufficient for this Court to address the suggestibility of the lineup on appeal. Accordingly, we conclude that defendant was not entitled to an expanded evidentiary hearing when originally requested, nor is he now entitled to this hearing postconviction. *See People v. Payne*, 285 Mich.App. 181, 195, 774 N.W.2d 714 (2009).

Second, we conclude that defendant has not shown that the identification was impermissibly suggestive. Defendant focuses on several factors that he insists rendered the identification procedure impermissibly suggestive. He claims that he was smaller than the other lineup participants, he was one of only two participants in an orange jail jumpsuit, and he had a lighter complexion than the other participants. "Physical differences among the lineup participants do not necessarily render the procedure defective and are significant only to the extent that they are apparent to the witness and substantially distinguish the defendant from the other lineup participants." *Hornsby*, 251 Mich.App. at 466, 650 N.W.2d 700. Generally, physical differences affect the weight of an identification, not its admissibility. *Id.*

Here, the physical differences were not so dramatic as to render the lineup impermissibly suggestive. Defendant has attached to his appellate brief the "Showup & Photo Identification Record" from the lineup. According to this form, defendant was 5′ 6″ tall and weighed 150 pounds. The other participants in the lineup were, respectively (Participant 1) 5′ 5″ tall and 195 pounds; (Participant 2) 6′ tall and 180 pounds; (Participant 3) 5′ 9″ tall and 150 pounds; (Participant 4) 6′ tall and 185 pounds; and (Participant 5) 5′ 9″ tall and 135 pounds. While there was some variance between the participants' heights and weights, it was not the type of variance that would make defendant stick out from the grouping. Indeed, defendant ranks somewhere in the lower-middle of the sample based on height and weight. Regarding defendant's complexion, the photograph does not depict any marked differences in complexion among the participants. Moreover, we note no marked variance in the physical build of the subjects in the photograph.

While it is generally preferable to present lineup participants in attire that is not indicative of their confinement (or alternatively to present all lineup participants in jailhouse attire, *see, e.g., United States v. Erickson*, 797 F.Supp. 1387, 1394 (N.D. Ill. 1992)), in this case, defendant was not the only person in the lineup wearing an orange jumpsuit. Furthermore, both Arnold and Primm testified that their identification of defendant was based solely on his facial features, not on clothing or other physical characteristics. Arnold specifically testified

12

> that his identification of defendant was not based on defendant's jumpsuit. In sum, defendant has not shown that the lineup was so suggestive as to distinguish substantially defendant from the other participants.
>
> To the extent that defendant argues that Arnold's and Primm's identifications were based upon factors external to the lineup, he has not provided evidence in support of that assertion. While defendant argues that Arnold saw defendant's picture on television before making his identification, Arnold's testimony makes clear that he only viewed defendant's name on the news after the lineup was conducted. Thus, defendant has provided no evidence of any influence that would render the lineup impermissibly suggestive.
>
> Finally, even if defendant had shown that the lineup was impermissibly suggestive, he has not shown that the error undermined the reliability of the jury's verdict. MCR 2.613(A). Several other pieces of evidence presented at trial tended to establish defendant's identity as the shooter. First, Hollis testified that he had known defendant for three years before the shooting, the two had a disagreement the day before the shooting, and defendant asked Hollis if he wanted to fight before starting to shoot, calling Hollis by his nickname when doing so. On appeal, defendant has not challenged Hollis's identification. Moreover, the record indicates that defendant was seen in a vehicle matching the description of the get-away vehicle shortly after the shooting. The evidence further shows that defendant fled when questioned by police. Defendant's flight is relevant circumstantial evidence of his consciousness of guilt. *Unger*, 278 Mich.App. at 226, 749 N.W.2d 272.
>
> Given this evidence of defendant's identity, we conclude that any error in the admission of Arnold's and Primm's identification of defendant would have been harmless. To the extent that defendant argues that his lineup counsel was ineffective for failing to object to the lineup procedure, because defendant has not shown that the lineup was impermissibly suggestive or that any suggestiveness undermines the reliability of the jury's verdict, defendant has failed to show that his lineup counsel was ineffective. *People v. Sabin* (On Second Remand), 242 Mich. App. 656, 659, 620 N.W.2d 19 (2000).

*Craft*, 927 N.W.2d at 715–16.

Craft has not shown that this decision was contrary to clearly established federal law, or that it was based on an unreasonable determination of fact. In other words, he has not shown that Supreme Court precedent requires a *Wade* hearing

13

whenever an individual challenges the constitutionality of a pretrial lineup.[2] Therefore, this Court finds that Craft is not entitled to habeas relief on this claim.

## IV. Supplemental Jury Instructions

Craft next asserts that the Michigan Court of Appeals arbitrarily denied reversal of his unlawful possession of a weapon and felony firearm convictions where the trial court erred in re-instructing the jury partway through deliberation, in violation of Supreme Court precedent. (ECF No. 1, PageID.9.) According to Craft, the trial court should have discharged the jury upon realizing that it failed to provide instructions on the unlawful possession and felony firearm counts. (*Id.*, PageID.13.) He says that the fact that the jurors specifically asked the trial court for instructions on the additional counts, and then returned a guilty verdict on those counts, exhibits that the jurors were biased against Craft. (*Id.*, PageID.28.) Craft relies substantially on state law, looking only to the Supreme Court's decision in *Illinois v. Somerville*, 410 U.S. 458 (1973), to support his second claim. To reiterate, the only decisions that this Court may consider in evaluating clearly established law for habeas purposes are decisions of the Supreme Court of the United States. 28 U.S.C. § 2254(d).

In *Illinois v. Somerville*, the trial court declared a mistrial over the defendant's objection upon the government's realization that the indictment was missing an

---

[2] Craft's precise wording in his petition was that he was "denied the type of hearing *Michigan* has long held to be mandatory under due process of law when a petitioner constitutionally challenges the admissibility of evidence, including but not limited to challenges under 'Wade' . . . ." (ECF No. 1, PageID.20.) But, as discussed above, a petition for writ of habeas corpus is not an appropriate means to challenge adherence to precedent set by the state or lower federal courts. 28 U.S.C. §2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 381–82 (2000)

14

essential element of the crime, and then retried the case with a new indictment. *Id.* at 460–61. The issue before the Court was whether the trial court violated the Double Jeopardy Clause. *Id.* To be sure, the Court revisited the discretion that a trial court has in declaring a mistrial, "whenever, in their opinion, taking all circumstances into consideration, there is manifest necessity for the act." *Id.* at 461 (quoting *United States v. Perez*, 9 Wheat. 579, 580 (1824)). And, in explaining that the Double Jeopardy Clause is not violated every time a judge directs a retrial, it did explain that one instance in which the clause is not violated is when the judge determines that members of the jury might be biased against the defendant. *Id.* at 470 (citing *Wade v. Hunter*, 336 U.S. 684, 688–89 (1949)). But the Court did not clearly establish that the circumstances surrounding the jury instructions in Craft's trial evinced bias or otherwise created the manifest necessity for declaring a mistrial.

Upon appeal, the Michigan Court of Appeals determined that rather than committing an error in re-instructing the jury, the trial court prevented one:

> Defendant next argues that the trial court erred by supplementing its original instructions with instructions on the two omitted counts, and, by doing so, the trial court committed structural constitutional error. While not entirely clear, it appears that defendant's argument is four-fold: (1) the trial court was purportedly barred from providing supplemental instructions on the two counts; (2) had the trial court not supplemented its instructions on the two counts, the jury would have been left with a complete lack of instruction on those counts; (3) any conviction on the hypothetically "uninstructed" counts would have been a structural constitutional error requiring automatic reversal; and (4) because the trial court should not have instructed on those counts, this Court should treat the trial court's supplemental instructions and the jury's subsequent convictions on the two counts as a structural constitutional error. While creative, the argument is ultimately unavailing.

15

One of the essential roles of the trial court is to present "the case to the jury and to instruct it on the applicable law" with instructions that include "all the elements of the offenses charged against the defendant and any material issues, defenses, and theories that are supported by the evidence." *People v. Dobek*, 274 Mich.App. 58, 82, 732 N.W.2d 546 (2007). Our court rules reflect that a trial court's initial jury instructions are not necessarily written in stone and that the instructions may need to be supplemented. Specifically, MCR 2.512(B)(1) provides, "At any time during the trial, the court may, with or without request, instruct the jury on a point of law if the instruction will materially aid the jury in understanding the proceedings and arriving at a just verdict." MCR 2.513(N)(1) further states, "After jury deliberations begin, the court may give additional instructions that are appropriate." Thus, the court rules give the trial court broad authority to carry out its duty to instruct the jury properly, and this authority extends to instructing the jury even during deliberations. There is nothing in the court rules that precludes the trial court from supplementing its original instructions with instructions for an entire count, nor is there anything in the rules to suggest that a party's acquiescence to the original instructions somehow acts as a bar to the trial court supplementing its instructions. Indeed, our court rules are intended to give trial courts the appropriate tools to avoid errors in the first place, and correct them in the second place. See *Prentis Family Foundation, Inc. v. Barbara Ann Karmanos Cancer Institute*, 266 Mich.App. 39, 52-53, 698 N.W.2d 900 (2005) (noting that "a trial court has unrestricted discretion to review its previous decision" absent an appellate court's prior holding to the contrary).

As for defendant's argument that the trial court committed a structural constitutional error by instructing the jury on the two counts, we conclude just the opposite—with its supplemental instructions, the trial court did not commit a structural constitutional error, but rather averted one. It was clear from the outset that defendant was being tried on five criminal counts. This was highlighted in the verdict form, which indicated that the jury had to render verdicts on three separate counts of assault with intent to commit murder, one count of carrying with intent, and one count of felony-firearm. Yet, when the jury reviewed the written instructions, it could not find anything covering the latter two counts. It therefore asked the trial court for guidance concerning their deliberations on the latter two counts: Was it to presume those counts had been dismissed or was the omission unintentional?

In response, the trial court concluded that it was appropriate to reinstruct the jury by rereading all of the instructions it had previously given and adding the specific instructions for the two omitted offenses. The supplemental instructions were "responsive to the jury's request

16

and did not serve to mislead the jury in any manner." *People v. Katt*, 248 Mich.App. 282, 311, 639 N.W.2d 815 (2001). In fact, the trial court could have chosen to give only the instructions on the two omitted offenses, but rather it chose to reinstruct the jury on all of the charges to avoid any prejudice that might have resulted from piecemeal consideration. *Id.* Had the jury returned a guilty verdict on either of the two counts without the additional instructions, the omission would have been a structural error likely warranting reversal. *People v. Duncan*, 462 Mich. 47, 48, 610 N.W.2d 551 (2000); *cf. People v. Traver*, 502 Mich. 23, 40 n. 7, 917 N.W.2d 260 (2018) (noting that it is an open question whether a defendant can waive appellate review of a structural error resulting from conviction on a charge for which there was a complete failure to instruct).

      The trial court's decision to reinstruct the jury—one which was made after considerable input from the parties—was reasonably calculated to protect defendant's right to a properly instructed jury while avoiding the time and costs of a new trial. Given this, the trial court's decision was within the range of reasonable and principled outcomes and was not an abuse of its discretion.

*Craft*, 927 N.W.2d at 713–15.

Craft has not shown that this decision was contrary to the clearly established law, or that it was based on an unreasonable determination of fact. Therefore, this Court finds that he is not entitled to habeas relief on this claim.

## V.  Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v.*

*McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, This Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

Reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, this Court denies Petitioner a certificate of appealability.

Although this Court concludes that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, it does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

Having conducted the review under 28 U.S.C. § 2254, Craft's petition for a writ of habeas corpus will be denied.

Having further considered whether a certificate of appealability should be granted under 28 U.S.C. § 2253, a certificate of appealability will not be issued.

18

An order consistent with this opinion will be entered.

Dated: October 14, 2021  /s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE